**Mary Lee LUNG, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 79 C 3144.

United States District Court, E. D. New York.

March 9, 1982.

---

Gair, Gair & Conason, New York City, for plaintiff.

Robert L. Begleiter, Asst. U. S. Atty., Brooklyn, N. Y., for the U. S.

## MEMORANDUM OF DECISION

GEORGE C. PRATT, District Judge:

Plaintiff brought this action to recover for injuries claimed to have been caused by a swine flu vaccine administered to her on November 10, 1976 as part of the national swine flu immunization program. Jurisdiction is not disputed. 28 U.S.C. § 1346(b) and 42 U.S.C. § 247(b).

Upon consent of the parties the court ordered that the issue of causation be tried separately. To that end, evidence was presented to the court sitting without a jury on February 8 and 9, 1982. Plaintiff offered her own testimony and that of her treating physician, Dr. Daniel C. Schapiro. In addition, plaintiff presented the MDL deposition of Dr. Richard M. Restak. In defense, the government presented the testimony of Dr. Bennett M. Derby, together with portions of the MDL depositions of Dr. Mahlon Z. Bierley, Jr., E. A. Timm, PhD, Dr. Peter J. Dyck, Dr. Gordon Meiklejohn, and Dr. Lawrence B. Schonberger. Various exhibits, including hospital records and doctors' reports, were placed in evidence.

The court has carefully considered the live testimony, the deposition testimony, the exhibits submitted, and the arguments of counsel. This memorandum constitutes the court's decision and includes the court's findings and conclusions pursuant to F.R.C.P. 52(a).

It is undisputed that plaintiff, a 44 year old widow, received a swine flu shot on November 10, 1976 and that she experienced no immediate reaction to it. She testified that prior to the end of 1976 she had experienced relatively good health. She had worked from 1963 to 1976 in her own business as a dry cleaner where she did considerable physical work, including the actual cleaning, relations with customers, carrying of garments and packages, and management of the premises. She testified that at no time had she experienced any difficulty in getting around, that she was active and had attended political meetings and club meetings, and had visited her children. She claimed that prior to the vaccine she had experienced no dizziness, weakness, nausea or pains in the neck or head, or any difficulty in walking. She claimed to have been able to work 10 to 15 hours a day without any problem.

According to her testimony, a week or two after the swine flu shot she noticed that she was getting tired, couldn't walk as fast, was nauseous, and had pain in her legs, feet, back and hips. These difficulties got worse, and her neck began to hurt, and

her head did not feel right. Finally, on December 23rd, she checked into Lenox Hill Hospital whose records reflect similar complaints. In the hospital she was given a number of tests and gradually improved until she was discharged on January 8, 1977.

Plaintiff never returned to work at the dry cleaners. She attempted one job in a CETA program but was unable to do the lifting that was required. She has held other part-time jobs in the meantime.

Her current complaints are that she has slowed down a great deal, feels weak, has pains in her head, neck and limbs, can't think as fast as she formerly could, has a shorter memory, and cannot walk as fast as the other pedestrians during rush hours. She does not currently receive any medication for either the pain or the weakness.

Dr. Schapiro diagnosed plaintiff's condition as encephalomyloradiculitis whose most probable cause in his opinion was a reaction of the brain to the swine flu vaccine. He rested his opinion primarily on the time connection between the vaccine and the onset of her symptoms, and the well-recognized history of adverse reactions to injections of foreign proteins such as the swine flu vaccine.

In his initial report to plaintiff's prior attorneys, dated February 8, 1978, defendant's ex. A, Dr. Schapiro referred to plaintiff's having developed "severe headache and posterior cervical and occipital pain a few days following a swine flu innoculation." He also mentioned increased protein of the cerebrospinal fluid and an elevated erythrocyte sedimentation rate. At trial, he acknowledged that he had been in error about the increased protein and the elevated sedimentation rates. Dr. Schapiro also acknowledged that the cervical problems which plaintiff had experienced came from another cause, not from swine flu vaccine.

To Dr. Schapiro plaintiff had recounted her initial symptoms as having begun a week or two, not a few days after the vaccination. They began with weakness and aches in the legs, feet, back and hips, and only later, shortly before she went to

the hospital in late December, did they progress to head and neck pains.

Dr. Derby testified that he disagreed with Dr. Schapiro's diagnosis of inflammation simultaneously of the brain, spinal cord, and peripheral nerve. According to him, several of the findings on the examinations in the hospital preclude involvement of the peripheral nerve roots. Those findings included the lack of any sign of motor deficit, the sensory findings, the normal EMG and NCV results and the normal cerebrospinal fluid.

Moreover, according to Dr. Derby, there was no indication of any inflammatory reaction at all. He placed particular stress upon the absence of any fever which he pointed out invariably accompanies encephalitis. Also absent was any increase of cells in the spinal fluid, and any abnormal reading of the electroencephalogram. Finally, Dr. Derby pointed out that encephalitis is an acute or sub-acute process which is monophasic rather than recurring as had been Mrs. Lung's difficulties.

Dr. Derby agreed that the EMG revealed diffuse changes, but he pointed out that they were not those of neurological abnormality. There was no indication of denervation of the nerves, and the finding of increased insertional activity was, according to him, non-specific and, standing by itself, without neurological significance. Finally, he attributed the decreased activation of voluntary motor units (muscle bundles) to plaintiff's failure to exert full power and termed it "volitional".

Dr. Derby concluded that plaintiff had not suffered from any disease of either the central or peripheral nervous systems, and that her complaints were not neurological in nature. He based his conclusion upon the lack of any objective evidence of neurological involvement in plaintiff's case, coupled with the evidence of chronic and continuing depression with anxiety features, including hysteric dysfunction.

The precise issue before the court is whether plaintiff has established by a fair preponderance of the credible evidence that

the injection of the swine flu vaccine on November 10, 1976 was a proximate cause of the conditions which caused her to be admitted to the hospital on December 23, 1976 and which have plagued her in varying degrees since that time. After careful consideration, the court is constrained to find that plaintiff has failed to meet that burden of proof.

It is clear that plaintiff suffers from significant impairment which has prevented her working and significantly restricted her activities since the end of 1976. The relation of these difficulties with the administration of the swine flu vaccine, however, is a purely temporal connection. There is nothing in the record other than the mere time sequence of events to connect the vaccine with plaintiff's difficulties. Nothing in the epidemiological studies of the swine flu program establishes any more probable association of symptoms of plaintiff's type with people who have had the swine flu vaccine than with those who have not.

Plaintiff's difficulties were not neurological in origin. The standard tests for neurological difficulties administered to her at the time all proved normal. In short, the evidence presented by plaintiff fails to satisfy her burden of establishing the necessary causal connection between the vaccine and her later symptoms.

The clerk, therefore, is directed to enter judgment in favor of the defendant dismissing the complaint.

SO ORDERED.